**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

```
---------------------------------------------------------x
WILFRED MORRISON,                    :     Case No. 08 CV 1150
                                     :
                                     :     Hon. Robert M. Dow
                                     :     Magistrate Judge Schenkier
                         Plaintiff,  :
                                     :
- against -                          :
                                     :
MERRILL LYNCH, PIERCE, FENNER        :
& SMITH, INCORPORATED,               :
                                     :
                         Defendant.  :
---------------------------------------------------------x
```

### ANSWER OF DEFENDANT MERRILL LYNCH & CO., INC.

Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), by its attorneys, Weil, Gotshal & Manges, LLP and Mayer Brown LLP, for its Answer to the Complaint of Plaintiff Wilfred Morrison ("Morrison" or "Plaintiff") herein, states:

### JURISDICTION

1.    Jurisdiction is based on 28 U.S.C. §§1331 and 1343, and principles of pendent and supplemental jurisdiction.

### ANSWER

Admits that Plaintiff seeks to invoke the jurisdiction of this Court under 28 U.S.C. §§1331 and 1343, and principles of pendent and supplemental jurisdiction and states that the allegations set forth in paragraph 1 of the Complaint constitute conclusions of law to which no responsive pleading is required.

### PARTIES

2.    Plaintiff is a Financial Advisor at Merrill Lynch, where he has been employed since 1998.

**ANSWER**

Admits the allegations set forth in paragraph 2 of the Complaint.

3.    Defendant Merrill Lynch is a publicly-traded, Fortune 100 corporation that does business across the United States and globally.  Merrill Lynch is a full service securities firm engaged in the retail and institutional sale of securities, options contracts and various other financial products.  Merrill Lynch employs more than 15,000 Financial Advisors ("FAs or "brokers") who serve the Firm's clients at offices located throughout the United States, including many offices in this District.  In 2006, Merrill Lynch had a net worth of over $30 billion and achieved net earnings that exceeded $7 billion.

**ANSWER**

Admits the allegations set forth in paragraph 3 of the Complaint.

## BACKGROUND

4.    Plaintiff has been employed by Merrill Lynch since 1998 in the Firm's Allentown, Pennsylvania and Milwaukee, Wisconsin offices.  Despite his strong performance and dedicated service, Plaintiff has been subjected to race discrimination and retaliation throughout his employment with Merrill Lynch.  Merrill Lynch has treated and continues to treat Plaintiff worse than employees who are not African-American, including by denying him the opportunity to advance to branch management.

**ANSWER**

Admits the allegations set forth in the first sentence of paragraph 4 of the

complaint.  Denies the allegations set forth in the second and third sentences of paragraph 4 of

the Complaint.

5.    Plaintiff is a class member in the putative nationwide class action, *McReynolds et al. v. Merrill Lynch*, Case No.  05-cv-06583, pending in the Northern District of Illinois.  *See* Ex. A, *McReynolds v. Merrill Lynch* Second Amended Complaint.  The race discrimination suffered by Plaintiff is consistent with and part of the nationwide, systemic discrimination against African-Americans alleged in *McReynolds v. Merrill Lynch*.

**ANSWER**

Admits the first sentence of paragraph 5 of the Complaint.  Admits that Exhibit A

to Plaintiff's Complaint is Plaintiffs' Second Amended Complaint in *McReynolds v. Merrill*

*Lynch*, as set forth in the second sentence of paragraph 5 of the Complaint.  Denies the rest of the

allegations set forth paragraph 5 of the Complaint.

6.    As set forth in the Charge of Discrimination Plaintiff filed with the Equal
Employment Opportunity Commission ("EEOC"), Plaintiff is relying on the *McReynolds v.
Merrill Lynch* lawsuit to vindicate his rights and incorporates the allegations therein into this
Complaint.[1]

**ANSWER**

Admits that Plaintiff purports to rely on the *McReynolds v. Merrill Lynch* lawsuit

to vindicate his rights, but denies that he has the ability to do so.  Denies the rest of the

allegations set forth in the text of paragraph 6 of the Complaint.  With respect to footnote 1 of the

Complaint, Defendant respectfully refers the Court to Plaintiff's EEOC charge for a full and

accurate statement as to what is contained therein.

7.    Plaintiff has filed this lawsuit in an abundance of caution to protect his legal rights
and claims to the extent they fall outside the scope of the allegations and claims pled in the
*McReynolds* lawsuit, which are tolled by that lawsuit.  Plaintiff does not wish to burden the Court
or waste judicial resources so will therefore request that this case be consolidated with the
*McReynolds v. Merrill Lynch* lawsuit as related and stayed until the *McReynolds* court decides
the class issues in that case.

---

[1]    In his EEOC charge, Plaintiff stated the following:  "The race discrimination suffered by
Complainant is consistent with and part of Merrill Lynch's nationwide, systemic discrimination
against African-Americans.  Complainant is a class member in the putative nationwide class
action, *McReynolds et al. v. Merrill Lynch*, Case No. 05-cv-06583, pending in United States
District Court in the Northern District of Illinois ("*McReynolds v. Merrill Lynch*").  Complainant
is relying on that lawsuit and incorporates the allegations therein into this Charge of
Discrimination as though stated herein.  *See* Ex. A, Second Amended Complaint, *McReynolds v.
Merrill Lynch*.  All claims set forth in this Charge relate back to that lawsuit and the
representative charges of discrimination affiliated with that lawsuit.  *See, e.g.*, Ex. B., Maroc
Howard Charge of Discrimination."

**ANSWER**

Denies knowledge or information sufficient to admit or deny the allegations set forth in paragraph 7 of the Complaint.

8.      As described more fully in the *McReynolds v. Merrill Lynch* Complaint, Merrill Lynch has and is engaged in a pattern and practice of race discrimination and retaliation against its African-American employees and employs company-wide practices and policies that have a disparate impact on African-Americans. *See generally* Ex. A. Merrill Lynch fails to provide African-Americans with equal opportunities to earn income and advance to management. The Firm maintains stereotypical and biased views about African-American employees and clients that form the basis of personnel decisions and create an environment where occupational segregation, disparate treatment and harassment are pervasive and condoned. Merrill Lynch's human resources department is ineffective at resolving complaints of race discrimination and retaliation, and, as a result, many African-Americans recognize the futility of lodging internal complaints. Those who do come forward are retaliated against. Merrill Lynch's pattern and practice of race discrimination is ongoing, as demonstrated in part by the dramatic, historic and continued underrepresentation of African-American brokers and managers.

**ANSWER**

Denies the allegations set forth in paragraph 8 of the Complaint.

**FACTUAL ALLEGATIONS**

9.      Consistent with Merrill Lynch's systemic discrimination against African-Americans, Plaintiff has been subjected to race discrimination and retaliation throughout his career. Merrill Lynch has failed to provide Plaintiff with the same opportunities to succeed and for promotion as employees who are not African-American. Plaintiff has not received the same level of resources, mentoring, managerial support, sales support, and business opportunities as his non-African-American counterparts. Plaintiff has also been harmed by Merrill Lynch's discriminatory management selection practices and denied promotion to the lucrative branch management position. Plaintiff has been subjected to a hostile work environment in which African-Americans are treated as inferior. When Plaintiff raised his treatment and that of other African-Americans with management and Human Resources, he was retaliated against for voicing these issues. As a result of Defendant's systemic discrimination, Plaintiff has received lower wages and commissions than similarly situated non-African-Americans and has been shut out of advancement opportunities. Merrill Lynch's unlawful conduct constitutes a continuing violation and includes, but is not limited to, the events described herein.

**ANSWER**

Denies the allegations set forth in paragraph 9 of the Complaint.

4

10.     Plaintiff was hired as a Financial Advisor in the Allentown, Pennsylvania office. Armed with a master's degree in economics and years of experience as a broker at a boutique investment firm, Plaintiff was well-prepared to succeed.  Indeed, Plaintiff was able to bring nearly all of his accounts with him when he joined Merrill Lynch.  Plaintiff was also active, well known and well respected in the Allentown community, where he served as an elected councilman, school board liaison, chairman of the planning commission, and board member of a local revitalization organization.

### ANSWER

Admits the allegations set forth in the first sentence of paragraph 10 of the

Complaint.  Denies knowledge or information sufficient to admit or deny the allegations in the

second, third, and fourth sentences set forth in paragraph 10 of the Complaint.

11.     When Plaintiff arrived at the Allentown Merrill Lynch office, he encountered a highly segregated workforce.  Plaintiff began his career as the only African-American FA in his office of over twenty FAs, and even when the office nearly doubled in size, Plaintiff remained the only tenured African-American FA in the office.  Nor did Merrill Lynch appear to make any real effort to hire African-American FAs.  Upon information and belief, only two African-American trainee brokers, or "POAs," were hired during Plaintiff's tenure.  Due to Defendant's systemic discrimination, both were soon driven out of the Firm.  On information and belief, when Plaintiff joined the Milwaukee office in 2005, he was the first African-American to ever work in that office, which has existed since approximately 1900.

### ANSWER

Denies the allegations set forth in the first sentence of paragraph 11 of the

Complaint.  Admits that Plaintiff began his career as the only African-American FA in the

Allentown office, but denies the rest of the allegations set forth in the second sentence of

paragraph 11 of the Complaint.  Denies the allegations set forth in the third sentence of

paragraph 11 of the Complaint.  Admits the allegations set forth in the fourth sentence of

paragraph of paragraph 11 of the Complaint.  Denies the allegations set forth in the fifth and

sixth sentences of paragraph 11 of the Complaint.

12.     Plaintiff, like other African-Americans at Merrill Lynch, has been denied the same income-generating opportunities as brokers who are not African-American, as alleged in

the *McReynolds et al. v. Merrill Lynch* lawsuit.  Throughout Plaintiff's employment, Merrill Lynch has maintained a discriminatory system of assigning important business opportunities, including accounts, referrals, leads, walk-ins, call-ins, and initial public offerings ("IPOs").  Plaintiff does not recall receiving leads, walk-ins, call-ins, referrals, or IPOs in his career at Merrill Lynch, though he understood that he qualified for IPO distributions.  Plaintiff rarely received accounts from departing brokers.  On the few occasions that accounts were directed to Plaintiff, they were typically small or problematic accounts.  One of the only quality accounts Plaintiff ever received demonstrates Merrill Lynch's race-based decision making and racial steering:  the clients in the household account were African-American.

### ANSWER

Denies the allegations set forth in paragraph 12 of the Complaint.

13.     Consistent with Merrill Lynch's systemic discrimination, Plaintiff has been disadvantaged by Merrill Lynch's policies and practices regarding partnerships, or "teams" of brokers.  Plaintiff has been excluded from favorable teams while FAs who were not African-American were able to join teams that resulted in the receipt of substantial assets and books of business.  Management approved or directed the formation of these teams.  Plaintiff has not been asked, encouraged or approached to join a team, and his attempts to form favorable partnerships or gain access to teams were rejected.

### ANSWER

Denies the allegations set forth in paragraph 13 of the Complaint.

14.     On more than one occasion, Plaintiff informed Merrill Lynch management and Human Resources ("HR") of the discriminatory operation of teams.  The Firm's HR representative acknowledged inequality in the formation and operation of teams.  Nevertheless, Merrill Lynch took no action to change the policies it knew to be discriminatory or to include African-Americans in teams.  Worse still, Plaintiff was retaliated against for raising these important issues to management and HR.

### ANSWER

Admits that Plaintiff complained to HR regarding teams, but denies the rest of the

allegations set forth in paragraph 14 of the Complaint.

15.     Plaintiff has not received the same managerial, administrative and sales support as his non-African-American colleagues to develop and service his book of retail brokerage business.  As a consequence of Defendant's discriminatory practices, Plaintiff's production, quintile ranking, and compensation have been considerably lower than they would have been had he received the same opportunities as his counterparts who were not African-American.

**ANSWER**

Denies the allegations set forth in paragraph 15 of the Complaint.

16.     Throughout his career at Merrill Lynch, Plaintiff, like other African-Americans, has been subjected to a hostile work environment where African-Americans are treated inferior, in a racially stereotypical fashion, and subjected to abusive and harassing treatment, comments and behavior.  In addition to the differential treatment and retaliation described herein, Plaintiff has been treated as an unwelcome outsider throughout his employment.  Plaintiff has been excluded from networking opportunities that might have led to business opportunities.  Merrill Lynch managers have been hostile to Plaintiff and have made no genuine attempt to mentor or otherwise assist him, or to regularly include him in meetings, social outings or networking opportunities.

**ANSWER**

Denies the allegations set forth in paragraph 16 of the Complaint.

17.     Plaintiff's managers and co-workers have also made clear his outsider status through actions and words, including race-based comments.  For example, a colleague in the Allentown office asked Plaintiff, "how's my nigger?"  A manager told him he needed to talk to an African-American POA about his hair, and that he "wished he had more whites like" Plaintiff, or words to that effect.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 17 of the

Complaint.  Denies knowledge or information sufficient to admit or deny the allegations set forth

in the second and third sentences of paragraph 17 of the Complaint.

18.     Although Merrill Lynch publicly touts its ever-changing diversity initiatives, these programs are ineffective and mere public relations "lip-service."  Internally, Merrill Lynch management is derisive about and openly flouts the Firm's diversity initiatives.  During meetings, managers complained that they were not permitted to hire white men any more, unless they were gay or disabled, or words to that effect.  Despite these comments, African-Americans appeared to seldom be hired.  When Plaintiff made suggestions about how to hire diverse candidates, he was told by management "that is not one of our priorities," or words to that effect.

**ANSWER**

Denies the allegations set forth in paragraph 18 of the Complaint.

19.     Negative stereotypes about African-Americans, and other ethnicities, pervade the Merrill Lynch culture.  Indeed, and at times under the mantra of so-called diversity, Merrill Lynch racially profiles its clients and steers clients, jobs and opportunities in a race-based fashion.

**<u>ANSWER</u>**

Denies the allegations set forth in paragraph 19 of the Complaint.

20.     Another aspect of Merrill Lynch's systemic discrimination, culture and hostile environment is the retaliation that results when employees raise issues involving discrimination and exclusion.  Plaintiff's treatment is illustrative of this culture and the inadequacy of the Firm's HR department.  On a number of occasions, Plaintiff has raised concerns about race discrimination to HR and to management.  In spite of Plaintiff's best efforts, the Firm's treatment of him and other African-Americans has not improved.  The discrimination against Plaintiff has continued and he has been targeted for retaliation and attempts to intimidate him into silence.

**<u>ANSWER</u>**

Denies the allegations set forth in the first and second sentences of paragraph 20

of the Complaint.  Admits the allegations set forth in the third sentence of paragraph 20 of the

Complaint, but denies the validity of the concerns raised by Plaintiff.  Denies the allegations set

forth in the fourth and fifth sentences of paragraph 20 of the Complaint.

21.     Branch managers[2] preside over more than 500 Merrill Lynch offices nationwide. Pursuant to Firm-wide policies, Merrill Lynch vests its branch managers with the responsibility to hire Financial Advisors and other personnel, to distribute important resources and business opportunities, and to provide managerial support and supervision to FAs.  The Firm's managers also implement and ensure compliance with Merrill Lynch's company-wide policies and practices and generally set the tone for office conduct.

**<u>ANSWER</u>**

Admits the allegations set forth in the text of paragraph 21 of the Complaint,

along with  the allegations set forth in the first sentence of footnote 2 of the Complaint.  Admits

---

[2]     Over the years, the title of the branch manager, or sometimes complex manager, has changed.  The current title is Director, but for sake of simplicity, Plaintiff uses "branch manager" throughout.

the allegation set forth in the second sentence of footnote 2 of the Complaint that the current title

is "Director," and acknowledges that Plaintiff used the term "branch manager" throughout the

Complaint.

22.     Merrill Lynch employs management grooming, assessment and selection
practices and policies that discriminate against and have a disparate impact on African-
Americans.  Management candidates are selected largely by a "tap-on-the-shoulder" process that
systemically excludes African-Americans.  As Merrill Lynch is aware, its management eligibility
criteria have a disparate impact on African-Americans.  The Firm's practices and policies
regarding management assessment and selection are steeped with stereotypes and otherwise
disadvantage African-Americans.  The Firm's exclusion of African-Americans from
management serves to perpetuate and reinforce its racially-biased culture.  Plaintiff's
unsuccessful attempts to pursue a career in branch management at Merrill Lynch illustrate the
discriminatory impact of Merrill Lynch's policies and practices.

## **ANSWER**

Denies the allegations set forth in paragraph 22 of the Complaint.

23.     Beginning at least in 1999, Plaintiff repeatedly expressed his interest in branch
management, asking his manager and HR about the path to branch management and available
management or "feeder" positions.  Plaintiff's many inquiries were discouraged or ignored.
Plaintiff was dissuaded from pursuing a career in management and told that no positions were
available.  Moreover, on information and belief, at the same time Plaintiff's management
inquiries were put off, similarly-situated white FAs in the Allentown office were placed in
management positions.

## **ANSWER**

Admits that after 1999, Plaintiff expressed interest in branch management, but

denies the rest of the allegations set forth in paragraph 23 of the Complaint.

24.     Despite the lack of support or encouragement by Merrill Lynch, Plaintiff did not
give up his aspirations to join management.  In 2004, Plaintiff forwarded postings he discovered
of available management positions to his manager and to HR and again asked about management
positions.  His manager again attempted to dissuade Plaintiff and even told him that the Punta
Gorda, Florida office, with older brokers and clients, would be like "babysitting."

**ANSWER**

Denies that Plaintiff was not provided with support or encouragement by Merrill Lynch as alleged in the first sentence of paragraph 24 of the Complaint, and denies knowledge or information sufficient to admit or deny the rest of the allegations set forth in the first sentence of paragraph 24 of the Complaint. Admits the allegations set forth in the second sentence of paragraph 24 of the Complaint. Denies the allegations set forth in the third sentence of paragraph 24 of the Complaint.

25.    Although it appeared that many management positions were available, Plaintiff was told that the only open position was a Resident Director ("RD") position in Milwaukee, Wisconsin, which Plaintiff pursued. An RD position is a lower-level "management" position that can be a stepping-stone to a branch management position. The RD position does not require formal management assessment or result in the same compensation or prestige as a branch manager position. As an RD, Plaintiff was to manage a small office but still maintain a book of retail brokerage business.

**ANSWER**

Denies the allegations set forth in the first sentence of paragraph 25 of the Complaint, but admits that Plaintiff pursued the RD position in Milwaukee. Admits the allegations set forth in the second, third, and fourth sentences of paragraph 25 of the Complaint.

26.    Prior to joining the Milwaukee office, Plaintiff was given only a cursory interview, during which his potential manager showed no interest in Plaintiff or his questions about the office. Indeed, despite his requests, Plaintiff was provided with virtually no information about the office he was to manage. The Milwaukee office Plaintiff joined in 2005 turned out to be riddled with problems. The office was not following many Firm policies, and there were a number of outstanding client complaints against FAs in the office. Plaintiff did not receive the management, administrative or other support afforded to RDs who were not African-American.

**ANSWER**

Denies the allegations set forth in paragraph 26 of the Complaint.

27.    Plaintiff also suffered retaliation after he brought to his manager's attention what appeared to be discriminatory compensation disparities in the office. Plaintiff's manager told

him to "counsel out," or terminate, a lower-paid Hispanic woman.  When Plaintiff explained his belief that, given the disparate rates of pay, this action would put the Firm at risk, Plaintiff's manager told him not to worry because "we have people in HR who can handle that," or words to that effect.

### ANSWER

Denies the allegations set forth in paragraph 27 of the Complaint.

28.     Despite the obvious problems at his Milwaukee office, Plaintiff received no support or guidance from his management team prior to or during his tenure.  To the contrary, on account of his race and in retaliation for his complaints regarding discrimination, Plaintiff's managers only served to undermine his work and credibility.  Plaintiff believes that his managers disparaged and attempted to solicit complaints about Plaintiff from personnel in his office.

### ANSWER

Denies the allegations set forth in paragraph 28 of the Complaint.

29.     After Plaintiff had been in the office for six months or less, his manager suggested he step down as RD.  Prior to that time, Plaintiff had not been told of any performance problems.  Indeed, Plaintiff believed he had made demonstrable progress in the office, including by reducing the office's expenses.

### ANSWER

Denies the allegations set forth in the first and second sentences of paragraph 29

of the Complaint.  Denies knowledge or information sufficient to admit or deny the allegations

set forth in the third sentence of paragraph 29 of the Complaint.

30.     As a result of the Firm's discrimination and retaliation, Plaintiff was removed from his management position in approximately April 2007, when the Caucasian RD of the Pewaukee, Wisconsin office was promoted to Managing Director of the entire Wisconsin complex and made the Director of Plaintiff's Milwaukee office.  Merrill Lynch did not offer Plaintiff the open RD position in Pewaukee or any other commensurate positions.

### ANSWER

Denies the allegations set forth paragraph 30 of the Complaint.

31.    Despite the campaign to remove Plaintiff from his RD position, in the summer of 2006, the Regional Manager in Chicago had placed Plaintiff on the "diversity list" of candidates to attend the May 2007 Management Assessment Center ("MAC").[3]  Plaintiff was not sponsored by his own manager, who also did not help him prepare for MAC or otherwise groom him for branch management.  Indeed, Plaintiff received no meaningful training or help from the Firm to prepare for MAC.  Plaintiff was assigned a mentor, who never met with him, then assigned another mentor who met with him only very briefly.

### ANSWER

Denies the allegations set forth in the text of paragraph 31 of the Complaint, along with the allegations set forth in the first sentence of footnote 3 of the Complaint.  Admits the allegation set forth in the second sentence of footnote 3 of the Complaint that candidates must be sponsored to attend MAC, but denies the rest of the allegations set forth in the second sentence of footnote 3 of the Complaint.  Admits that MAC takes place over a three-day period and that candidates are required to complete a series of exercises and mock-scenarios, but denies the rest of the allegations set forth in the third sentence of footnote 3 of the Complaint.

32.    Consistent with the Firm's systemic discrimination, the management assessment process is performed predominantly by non-African-Americans and is replete with racial stereotypes.  As a result of racial bias, the skills of African-Americans are overlooked and undervalued.  African-Americans are typically shut out of the real training and preparation process, which tends to be informal and occurs behind closed doors.  Like the few other African-Americans who attended MAC, Plaintiff was treated differently and worse than his white counterparts, in part due to exercises riddled with embarrassing and offensive stereotypes that the candidates were expected to carry out.  As a result of race discrimination, the Firm did not "pass" Plaintiff from MAC.

### ANSWER

Denies the allegations set forth in paragraph 32 of the Complaint.

---

[3]    MAC is a facility in which annual or bi-annual assessments are made of management candidates.  Candidates must be sponsored to attend, and then are usually groomed and prepared before the assessment process.  MAC takes place over a three-day period, and candidates are required to complete a series of exercises and mock-scenarios to test their management aptitude.

33.     After the May 2007 MAC, management continued to deny Plaintiff the support and encouragement for re-assessment that is offered to MAC attendees who are not African-American.  Plaintiff expressed a desire to be re-assessed and was told that he would be put on a plan to prepare him for reassessment, but he received no such plan.  Being ousted from an official management role further reduced Plaintiff's chances of passing a re-assessment, should one occur.  The end result is that Plaintiff effectively has been shut out of branch management.

### ANSWER

Denies the allegations set forth in the paragraph 33 of the Complaint.

34.     As a result of Merrill Lynch's unlawful conduct, Plaintiff has suffered substantial damages, including lost wages and other benefits.  Plaintiff has also suffered embarrassment and humiliation, and his career and reputation have been irreparably damaged as a result of Defendant's unlawful conduct.  Plaintiff has suffered loss of enjoyment of life, inconvenience and other pecuniary and non-pecuniary losses as a direct result of the Firm's conduct, as well as incurring attorneys' fees and costs.

### ANSWER

Denies the allegations set forth in paragraph 34 of the Complaint.

35.     Punitive damages are appropriate due to Defendant's intentional conduct and continued reckless indifference to the federally protected rights of Plaintiff and other African-Americans.

### ANSWER

Denies the allegations set forth in paragraph 35 of the Complaint.

## COUNT I

### RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. 2000E et seq.

36.     Plaintiff realleges and incorporates as though stated in Count I each preceding paragraph of this Complaint.

### ANSWER

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

37.     Plaintiff filed a representative charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received Notice of Right to Sue.

**ANSWER**

Admits the allegations set forth in paragraph 37 of the Complaint.

38.     Title VII of the Civil Rights of 1964, 42 U.S.C. 2000 et seq. and amendments thereto ("Title VII") make it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms or conditions, or privileges of employment, because of such individual's race, color or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, or national origin.

**ANSWER**

Defendant respectfully refers the Court to the text of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. 2000 et seq., and amendments thereto as the best evidence of the contents

thereof, and further states that the allegations set forth in paragraph 38 of the Complaint

constitute conclusions of law to which responsive pleading is required, and respectfully refers

those allegations to the Court.

39.     It is unlawful for an employer to engage in racially biased decision-making and treatment.  It is also unlawful for an employer to make decisions infected by stereotypical thinking or other forms of less conscious bias.  Employers are not lawfully allowed to engage in racially motivated conduct driven by business concerns, for example, concerns about the effect on employee relations, or the negative reaction of clients or customers.  Thus, an employer violates the law when it acquiesces, accedes to or perpetuates perceived customer bias.  Nor may race or color ever be a bona fide occupational qualification under the law.

**ANSWER**

Defendant respectfully refers the allegations set forth in paragraph 39 of the

Complaint to the Court, and state that these allegations constitute conclusions of law to which no

responsive pleading is required.

40.    Through the conduct alleged in this Complaint, and the Second Amended Complaint in the *McReynolds et al. v. Merrill Lynch* lawsuit, Merrill Lynch violated Title VII of the Civil Rights Act of 1964 and amendments thereto by subjecting Plaintiff and other African-Americans to differential treatment and by adopting policies and practices that had a disparate impact against African-Americans.

### ANSWER

Denies the allegations set forth in paragraph 40 of the Complaint.

41.    Merrill Lynch is strictly responsible for the acts and conduct of its managers and knew of should have known of a culture created by its managers and employees that discriminated against and was hostile to Plaintiff and to African-Americans.

### ANSWER

Denies the allegations set forth in paragraph 41 of the Complaint.

### COUNT II

### RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. SECTION 1981

42.    Plaintiff realleges and incorporates by reference as though fully stated in Count II the preceding paragraphs of this Complaint.

### ANSWER

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

43.    Section 1977 of the Revised Statutes, 42 U.S.C. Section 1981 as amended guarantees all persons the same right to make and enforce contracts as non-African-Americans. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of contractual relationship.

### ANSWER

In response to the allegations set forth in the first sentence of paragraph 43 of the

Complaint, Defendant respectfully refers the Court to the text of 42 U.S.C. § 1981 as the best

evidence of the contents thereof, and state that these allegations constitute conclusions of law to

which no responsive pleading is required. Defendant states that the allegations set forth in the second sentence of paragraph 43 of the Complaint constitute conclusions of law to which no responsive pleading is required, and respectfully refers those allegations to the Court.

44.    Merrill Lynch subjected Plaintiff to racial discrimination in violation of 42 U.S.C. Section 1981.

### ANSWER

Denies the allegations set forth in paragraph 44 of the Complaint.

## COUNT III

### NEGLIGENT HIRING AND SUPERVISION

45.    Plaintiff realleges and incorporates by reference as though fully stated in Count III the preceding paragraphs of this Complaint.

### ANSWER

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

46.    Through this Complaint, and the Second Amended Complaint in the *McReynolds et al. v. Merrill Lynch* lawsuit, Plaintiff alleges that Merrill Lynch breached the duty of care it owes its employees by negligently hiring and supervising managers who caused injury to Plaintiff.

### ANSWER

Denies the allegations set forth in paragraph 46 of the Complaint.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47.     Plaintiff realleges and incorporates by reference as though fully stated in Count IV the preceding paragraphs of this Complaint.

### ANSWER

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

48.     Through this Complaint and the Second Amended Complaint in the *McReynolds et al. v. Merrill Lynch* lawsuit, Plaintiff alleges that through its agents, Merrill Lynch intended to cause Plaintiff severe emotional distress, the conduct toward Plaintiff was extreme and outrageous, Merrill Lynch's conduct caused the injury, and Plaintiff suffered an extreme emotional response.

### ANSWER

Denies the allegations set forth in paragraph 48 of the Complaint.

## COUNT V

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

49.     Plaintiff realleges and incorporates by reference as though fully stated in Count V the preceding paragraphs of this Complaint.

### ANSWER

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

50.     Merrill Lynch had a duty of care to Plaintiff and breached that duty, Plaintiff suffered severe emotional distress, and Merrill Lynch's conduct, through its agents, was the cause-in-fact of Plaintiff's injury.

### ANSWER

Denies the allegations set forth in paragraph 50 of the Complaint.

## COUNT VI

**BREACH OF EXPRESS CONTRACT**

51.    Plaintiff realleges and incorporates by reference as though fully stated in Count VI the preceding paragraphs of this Complaint.

### ANSWER

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

52.    Merrill Lynch entered into certain written contracts with Plaintiff as an employee.

### ANSWER

Denies the knowledge or information sufficient to identify, and thereby admit or

deny the existence of, the contracts to which Plaintiff refers in paragraph 52 of the Complaint.

53.    These contracts required Merrill Lynch, among other things, to provide Plaintiff with leads, referrals, account distributions, training, sales support, managerial support, mentoring, and other resources and business opportunities.

### ANSWER

Denies the allegations set forth in paragraph 53 of the Complaint.

54.    Merrill Lynch breached these contracts by engaging in the conduct described above and otherwise failing to perform its obligations, including but not limited to depriving Plaintiff of leads, referrals, account distributions, sales support, managerial support, mentoring and other resources.

### ANSWER

Denies the allegations set forth in paragraph 54 of the Complaint.

55.    These contracts also required Merrill Lynch to comply with the anti-discrimination laws, which Merrill Lynch failed to do with respect to Plaintiff and other African-Americans.

**ANSWER**

Denies the allegations set forth in paragraph 55 of the Complaint except that

Defendant admits that Merrill Lynch must comply with anti-discrimination laws.

56.    These breaches caused Plaintiff substantial damages as described herein.

**ANSWER**

Denies the allegations set forth in paragraph 56 of the Complaint.

## COUNT VII

## BREACH OF IMPLIED CONTRACT

57.    Plaintiff realleges and incorporates by reference as though fully stated in Count VII the preceding paragraphs of this Complaint.

**ANSWER**

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

58.    Merrill Lynch entered into certain implied contracts with Plaintiff.

**ANSWER**

Denies the allegations set forth in paragraph 58 of the Complaint.

59.    These contracts arose out of written instruments, oral promises, employee handbooks, and patterns and practices of customary conduct, and included, *inter alia*, policies of nondiscrimination.

**ANSWER**

Denies the allegations set forth in paragraph 59 of the Complaint.

60.    Certain agreements were based on, *inter alia*, clear promises that Plaintiff reasonably believed constituted offers, which were disseminated in a manner such that Plaintiff was aware of the contents of the offers.

**ANSWER**

Denies the allegations set forth in paragraph 60 of the Complaint.

61.     After learning of the offers, Plaintiff began or continued to work for Merrill Lynch, thus accepting the offers and formal binding agreements.

**ANSWER**

Denies the allegations set forth in paragraph 61 of the Complaint.

62.     The agreements obligated Merrill Lynch to give or make available to Plaintiff leads, referrals, account distributions, training, sales support, managerial support, mentoring, and other resources and business opportunities.

**ANSWER**

Denies the allegations set forth in paragraph 62 of the Complaint.

63.     By engaging in the conduct described above and otherwise failing to perform its obligations, Merrill Lynch breached these agreements and deprived Plaintiff of the benefit of his bargain.

**ANSWER**

Denies the allegations set forth in paragraph 63 of the Complaint.

64.     Merrill Lynch also breached these agreements by failing to honor its obligations in an equal fashion, favoring non African-American employees over African-American employees.

**ANSWER**

Denies the allegations set forth in paragraph 64 of the Complaint.

65.     These breaches caused Plaintiff substantial damages as described herein.

**ANSWER**

Denies the allegations set forth in paragraph 65 of the Complaint.

**COUNT VIII**

**DEFAMATION**

66.     Plaintiff realleges and incorporates by reference as though fully stated in Count XI the preceding paragraphs of this Complaint.

**ANSWER**

Admits that Plaintiff purports to incorporate by reference the preceding

paragraphs.

67.    Through the conduct alleged in this Complaint, Merrill Lynch defamed Plaintiff
and caused him harm.

**ANSWER**

Denies the allegations set forth in paragraph 67 of the Complaint.

## PRAYER FOR RELIEF

68.    WHEREFORE, Plaintiffs and all others similarly situated respectfully request
seek the following relief:

a.    Declare that the acts and conduct of Merrill Lynch were unlawful and find in
Plaintiff's favor and against Merrill Lynch as to Counts I - VII;

b.    Award Plaintiff the value of all compensation and benefits lost as a result of
Merrill Lynch's unlawful conduct;

c.    Award Plaintiff the value of all compensation and benefits he will lose in the
future as a result of Merrill Lynch's unlawful conduct;

d.    Award Plaintiff make-whole relief and statutory, compensatory and punitive
damages;

e.    Award Plaintiff prejudgment interest;

f.    Award Plaintiff attorneys fees, costs and disbursements;

g.    Award Plaintiff such other equitable, injunctive and legal relief as this Court
deems just and proper to end Defendant's unlawful employment practices and fairly compensate
Plaintiff.

**ANSWER**

Defendant admits that Plaintiffs pray that the Court award the relief as set forth in

paragraphs "a" through "g" of the "Prayer," and denies that Plaintiffs are entitled to any of the

relief prayed for in the Prayer.

## DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff lacks standing to raise some or all of the claims.

3.      Some, or all, of Plaintiff's claims are barred by applicable statutes of limitation.

4.      Plaintiff has failed to identify a pattern or practice of discrimination on the basis of race.

5.      Venue is not proper in this district including because Plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e *et seq.* do not satisfy the specific venue requirements of 42 U.S.C. § 2000e-5(f)(3).

6.      Merrill Lynch had legitimate non-discriminatory reasons for the employment actions taken in connection with Plaintiff.

7.      Merrill Lynch denies that race or any other impermissible factor plays any role in its hiring, training, promotion, compensation, distribution of accounts, length of service designation procedures, or in any other policy or procedure that Plaintiff is, or may be, challenging.

8.      In the alternative, in the event that the Court or a jury concludes that race was a motivating factor in any of the employment decisions challenged by Plaintiff, which Merrill Lynch expressly denies, Merrill Lynch affirmatively avers that the same decisions would have been made even absent consideration of race.

9.      Merrill Lynch has taken reasonable care to prevent and remedy promptly any incidents of alleged racial discrimination and/or harassment brought to its attention; it has policies banning discrimination and/or harassment in the workplace and a reasonable and available procedure for handling complaints thereof, which provides for prompt and effective responsive action.  To the extent that Plaintiff has not availed himself of these policies or procedures or acted reasonably to otherwise avoid harm, his claims of racial discrimination and/or harassment by managers,

supervisors, and/or co-workers are barred.  To the extent that Plaintiff has used these policies and

procedures and his alleged concerns have been dealt with promptly and effectively, Plaintiff's

claims are barred and/or he has suffered no damages as a result.

10.     Any instances of discriminatory or harassing conduct by co-workers, which Merrill

Lynch denies, would have contravened Merrill Lynch's good faith efforts to enforce and follow

anti-discrimination laws.  Merrill Lynch has issued policies and established procedures for

complaints of alleged discrimination and/or harassment and have promulgated, taught, and

enforced those policies and procedures in its workplaces.  Merrill Lynch has exercised

reasonable care to prevent and correct promptly any discriminatory and/or harassing behavior.

To the extent that Plaintiff is unable to prove that Merrill Lynch knew or should have known of

the alleged discrimination and/or harassment and that Merrill Lynch failed to take prompt

remedial action, he is barred from recovering from Merrill Lynch.

11.     To the extent that Merrill Lynch discovers during the course of this action that Plaintiff

engaged in any conduct that would warrant discharge from Merrill Lynch, Plaintiff's right to

recover damages beyond the date of that conduct are cut off.

12.     Plaintiff has failed to mitigate his damages.

13.     Plaintiff's claims are barred by the doctrines of laches and waiver.

14.     Plaintiff is not entitled to punitive damages because Merrill Lynch did not act with an

evil motive or intent or with reckless or callous indifference to the federally protected rights of

the Plaintiff.  Any compensatory or punitive damages are limited to the amounts authorized by

42 U.S.C. §1981(b)(1).

15.     To the extent plaintiff seeks relief under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e *et seq.*, from or for employment decisions or actions that were not

included in a charge timely filed with the appropriate administrative agency, such claims are barred because of the failure to exhaust administrative remedies and/or the failure to satisfy the statutory prerequisites and the Court therefore lacks subject matter jurisdiction over such claims.

16.     To the extent plaintiff seeks relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e *et seq.*, from or for employment decisions or actions that were not made the subject of a timely charge with the appropriate agency, such claims are barred.

17.     To the extent plaintiff's Complaint was not filed within 90 days of Plaintiff's receipt of a Notice of Right to Sue, plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e *et seq.*, are barred.

18.     To the extent plaintiff seeks to impose liability based on claims that Defendant applies differing standards of compensation, or different terms, conditions, or privileges of employment, Defendant cannot be liable because such differences are applied pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production, and such differences are not the result of an intention to discriminate because of race or color.

Defendant hereby reserves its right to assert other defenses and affirmative defenses as this action proceeds.

Dated: April 17, 2008

MAYER BROWN LLP

s/ Lori E. Lightfoot
Lori E. Lightfoot
71 S. Wacker Drive,
Chicago, IL 60606,
(312) 782-0600 (Phone)
(312) 701-7711 (Facsimile)

-and-

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein
Nicholas J. Pappas
Salvatore A. Romanello
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Facsimile)

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I, Lori E. Lightfoot, hereby certify that I caused a copy of the foregoing ANSWER OF DEFENDANT MERRILL LYNCH & CO., INC. to be served upon:

Stowell & Friedman, Ltd.
Mary Stowell
Linda Friedman
321 S. Plymouth Court
Suite 1400
Chicago, Illinois  60604

via the Court's Electronic Court Filing System and First Class Mail on or before 5:00 p.m. on April 17, 2008.

/s Lori E. Lightfoot
Lori E. Lightfoot